SHEIK JOEL BRATTON-BEY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bratton-Bey v. Commissioner
Docket No. 18508-80.
United States Tax Court
T.C. Memo 1982-19; 1982 Tax Ct. Memo LEXIS 734; 43 T.C.M. (CCH) 299; T.C.M. (RIA) 82019; January 12, 1982. Sheik Joel Bratton-Bey, pro se. J. Carlton Howard, Jr., for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined the following deficiencies in petitioner's Federal income taxes and additions to tax: Addition to Tax
Year
Deficiency
Section 6653(b) [1]
1975
$ 1,915.00
$ 957.50
1976
2,332.00
1,166.00
1977
2,323.00
1,161.50
1978
2,119.00
1,059.50
*735 In his answer respondent alleged, in the alternative, that the petitioner is liable for additions to tax for failure to file returns and for negligence as follows: Addition to tax
Addition to Tax
Year
Section 6651(a)
Section 6653(a)
1975
$ 478.00
$ 95.00
1976
583.00
116.00
1977
580.00
116.00
1978
529.00
105.00
The issues presented for decision are (1) whether the income received by petitioner, a Moorish American, is exempt from Federal income tax; (2) whether petitioner's underpayment of income tax for each of the years 1975 through 1978 was due to fraud with intent to evade tax so that he is liable for the additions to tax under section 6653(b); and (3) if the Court decides that petitioner is not liable for the section 6653(b) additions to tax, whether he is liable for the additions to tax under sections 6651(a) and 6653(a). FINDINGS OF FACT Some of the facts have been stipulated by the parties and are so found. Sheik Joel Bratton-Bey (petitioner) was a resident of Baltimore, Maryland, *736 when he filed his petition in this case. For he years 1975 through 1978 the petitioner did not file Federal income tax returns, although for at least 10 years prior to 1975 he regularly filed proper Federal income tax returns on Forms 1040. During the years 1975 through 1978 the petitioner was employed as a housing inspector by the City of Baltimore. He earned the following wages: Year
Wages
1975
$ 11,179.19
1976
12,896.34
1977
12,855.18
1978
13,747.79
For each of the years 1975 through 1978 the petitioner received a Form W-2 from the City of Baltimore showing his total wages earned for the particular year. For years prior to 1975 the petitioner filed a Form W-4 (Employee's Withholding Exemptions Certificate) claiming three exemptions for Federal income tax purposes. Since April 18, 1975, petitioner has been a member of the Moorish Science Temple, the Divine and National Movement of North America, Inc., No. 13. On May 2, 1975, petitioner changed his Form W-4 to claim 13 exemptions, although he knew that he did not have 13 exemptions which he was entitled to claim. He continued to claim 13 exemptions through the years in issue. During the *737 years 1975 through 1978 it was customary for the members of the Moorish Science Temple to avoid forced withholdings from their wages by claiming either 13 W-4 exemptions or filing Forms W-4E. The use of excessive exemptions by the members of the Moorish Science Temple was not meant to put the Internal Revenue Service on notice that the members were refusing to pay their Federal income taxes. In 1977 the petitioner filed with his employer an exemption Form W-4E, claiming that he did not incur liability for Federal income tax for the previous year and that he anticipated no tax liability for the current year. He filed the form to make sure that no taxes would be withheld from his wages. Although small amounts of taxes were withheld from petitioner's wages after he claimed the 13 exemptions and before he filed the Form W-4E, he did not file a claim for refund of such amounts during any of the years in issue. Petitioner, whose title is "Sheik," has been a leader in the Moorish Science Temple since 1975. He is a member of "Adepth Chamber," the governing body of the Moorish Science Temple. He has also served as the Chief Special Investigator of the Moorish Science Temple and has *738 served as the sect's Chief Legal Counselor, sitting at the petitioner's counsel table in not only his own case but also the cases of Sheikess Mildred Wiggins-El, Docket No. 4540-79; Gloria Cherry-El, Docket No. 11346-79; and Florence Haversham-Bey, Docket No. 15924-79. The Moorish Science Temple encourages its members to avoid paying Federal income taxes. The sect makes this policy known to potential members as a means of drawing their attention to its general philosophies and tenets and encouraging them to join. The Moorish Science Temple also encourages its members to have their Federal income tax withholdings reduced by filing Forms W-4 claiming 13 exemptions or filing Forms W-4E with their employers. In his notice of deficiency dated July 3, 1980, respondent determined that the petitioner had substantial unreported income for each of the years in issue and based his deficiencies and additions to tax thereon. He also allowed the petitioner the standard deduction and one exemption. ULTIMATE FINDINGS OF FACT 1. Petitioner had substantial unreported income for each of the years 1975 through 1978. 2. Petitioner's intentional failure to file Federal income tax returns *739 for the years 1975 through 1978 and to report his correct taxable income thereon was due to fraud with intent to evade tax. 3. Petitioner fraudulently submitted false Forms W-R and W-4E to his employer, the City of Baltimore. 4. The underpayment of income tax for each of the years 1975 through 1978 was due to petitioner's fraud. OPINION The correct taxable income of petitioner in the form of wages received from the City of Baltimore has been stipulated for each of the years in issue. Petitioner claims that he, as a Moorish American, is not legally subject to the Federal income tax. His argument is based on the Emancipation Proclamation; Article I, Section 2 of the Constitution of the United States; and the Supreme Court's decision in the Dred Scott case ( Scott v. Sandford60 U.S. 393 (1856)). Neither the Emancipation Proclamation nor the Dred Scott decision discusses or deals with the Federal laws relating to income taxation. Furthermore, it is a matter of fundamental legal history that over a century ago the Dred Scott decision was nullified by the ratification of the Thirteenth Amendment. Article I, Section 2 of the Constitution, which *740 requires apportionment of direct taxes imposed by the Congress does not apply to the income tax. The Sixteenth Amendment gives Congress the power to lay an income tax without apportionment. In substance the petitioner's position is as follows: A Negro is not a member of the political community formed and brought into existence by the Constitution of the United States, nor can a Negro become entitled to All Rights and privileges guaranteed by the Constitution to a citizen. Not being a legal citizen and being classed as a Negro, the petitioner is not liable to file or pay any taxes. From this premise the petitioner asserts that neither he nor his ancestors have ever been granted full citizenship under the Constitution and that, being classed as a Negro, he has never been released from the state of human property. [2]
*741 The first sentence of Amendment XIV, Section 1 of the Constitution provides: All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. * * * See also sec. 1.1-1(c), Income Tax Regs. There is no evidence that petitioner was not born in the United States, that he is not a citizen and resident of the United States, or that he is classed as "human property." This Court has previously addressed exactly the same issue in the cases of Wiggins-El v. Commissioner, T.C. Memo. 1981-495 and Gaines-El v. Commissioner, T.C. Memo. 1975-54. In both of those cases, as here, the taxpayers were held not exempt from income tax under the Constitution merely because they were Moorish Americans. The taxpayers were bona fide residents of the United States who enjoyed the benefits of their status, and, as such, were not exempt from their obligation to financially support the government. Therefore, we hold that the petitioner is liable for and subject to the Federal income tax under the Constitution. See and compare Russell v. Commissioner, 60 T.C. 942 (1973); *742 Muste v. Commissioner, 35 T.C. 913 (1961); Walters v. Walters, 474 F.2d 1349 (6th Cir. 1973); and Autenrieth v. Cullen, 418 F.2d 586 (9th Cir. 1969). The next issue is whether the petitioner is liable for the section 6653(b) additions to tax for fraud. The burden of proving fraud is on the respondent, and he must carry his burden by clear and convincing evidence. Section 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure. He must show that the taxpayer intended to evade taxes which he knew or believed he owed, by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. Unied States, 398 F.2d 1002, 1004 (3d Cir. 1968), cert. denied 393 U.S. 1020 (1969); Webb v. Commissioner, 394 F.2d 366, 377 (5th Cir. 1968), affg. a Memorandum Opinion of this Court; Acker v. Commissioner, 26 T.C. 107, 112-113 (1956). The presence or absence of fraud is a factual question to be determined upon consideration of the entire record. Mensik v. Commissioner, 328 F.2d 147, 150 (7th Cir. 1964), affg. 37 T.C. 703 (1962), *743 cert. denied 379 U.S. 827 (1964); Otsuki v. Commissioner, 53 T.C. 96, 105-106 (1969). Since fraud can seldom be established by direct proof of intention, the taxpayer's entire course of conduct is often relied on to establish circumstantially such fraudulent intent. Stone v. Commissioner, 56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner, supra at 105-106. We hold on this record that respondent has proved fraud by clear and convincing evidence. Failure to file returns does not in itself establish fraud. However, such failure may properly be considered in connection with other facts in determining whether any underpayment of tax is due to fraud. Beaver v. Commissioner, 55 T.C. 85 (1970); Bennett v. Commissioner, 30 T.C. 114 (1958). An extended pattern of nonfiling, plus some "convincing affirmative indication" of the requisite specific intent to defraud, warrants imposition of the addition to tax for fraud. Stoltzfus v. United States, supra at 1005. Here the indicia of fraud are abundant. First, petitioner was well aware of his obligation to file returns *744 and that taxes were due for each of the years 1975 through 1978. He is a knowledgeable person. He had filed Federal income tax returns for at least 10 previous years. He earned substantial income in wages from the City of Baltimore which equired him to file returns. He had received Forms W-2 from the City of Baltimore setting forth his wages. Second, he submitted a false and fraudulent Form W-4 (Withholding Certificate) to his employer in 1975 increasing the number of exemptions claimed from three to thirteen when he knew that he was not entitled to claim thirteen exemptions. In 1977, he again changed his withholding exemptions by filing a Form W-4E. One of his reasons for doing so was to insure that no withholdings would be taken from his wages, even the minor amounts that had actually been withheld while he was claiming thirteen exemptions. The submission of such false documents is evidence of fraud. See and compare Raley v. Commissioner, T.C. Memo. 1980-571, on appeal (3d Cir. 1981); Cook v. Commissioner, T.C. Memo. 1980-415; and Forbush v. Commissioner, T.C. Memo. 1979-214. Third, it is clear that petitioner's refusal *745 to pay any taxes stems from his affiliation with the Moorish Science Temple. The evidence shows that a conscious, knowing decision was made by the leadership of that sect, including petitioner, to stop paying taxes through the device of claiming excessive exemptions. While the number 13 apparently has special meaning to the sect, the use of 13 exemptions was simply meant to avoid paying taxes. These facts clearly support the respondent's determination of fraud. Fourth, the petitioner attempted to conceal his tax protest. Until the Internal Revenue Service made its inquiries into his individual income tax situation in 1979, he made no attempt to notify respondent that he no longer considered himself to be liable for income taxes. The concealment of his correct income from the government is an important element of proof in demonstrating his intent to defraud the government. United States v. Afflerbach, 547 F.2d 522 (10th Cir. 1976); Gajewski v. Commissioner, 67 T.C. 181 (1976), affd. per order 578 F.2d 1383 (8th Cir. 1978). Fifth, the petitioner has been a member of the central governing committee of the sect, the Adepth Chamber, *746 since 1975. He has also served as the Chief Special Investigator of the sect and as its Chief Legal Counselor. He has sat at the counsel table in at least three previous cases in this Court involving members of his sect. He has been one of the sect's primary voices and leaders in its tax protest since 1975. In his various leadership capacities with the sect, he has been a key individual in the execution of the sect's decisions to encourage its members to stop filing tax returns and to file false Forms W-4 and Forms W-4E. Accordingly, after examining and evaluating the facts contained in this record, we have found and hold that part of the underpayments of tax for each of the years at issue was due to the petitioner's fraud. We therefore sustain the additions to tax under section 6653(b). [3]
Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, unless otherwise indicated.↩
2. In his brief petitioner argues in part: The Petitioner must be a Bonafide Citizen before he can be legally taxed. * * * To conceive the design of enslaving an individual we must presuppose that he is free; the first act of enslavement is to deprive him of his liberty. This the Negro never had since the Creation of man. The Negro is an Ape; hence, his status in the Universe, his relation to Man, like that of every other animal, was fixed irrevocably by God in the Creation, and no act upon man's part, whether legislative, executive or judicial, can change it. The Petitioner's so-called name, Joel Bratton-Bey is a European name, therefore placing Master Bratton responsible↩ for any taxes owed to this said Government. * * *
3. In view of this holding we do not have to reach the alternative issues of whether petitioner is liable for the additions under sections 6651(a) and 6653(a).↩